## Commonwealth of Massachusetts

MIDDLESEX, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 1981CV03386

Xujian Ren, PLAINTIFF(S),

V.

Keolis Commuter Services, LLC DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO Keolis Commuter Services, LLC. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Middlesex Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a. Filing your **signed original** response with the Clerk's Office for Civil Business, Middlesex Court, 200 Trade Center, 2nd Fl, Woburn, MA (address), by mail or in person, **AND**

    b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: SJnLaw, LLC, 46 S. Main St. Sharon, MA 02067

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

A true copy Attest:

_____ Deputy Sheriff Suffolk County

12-23-19

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _December 10_, 20_19_.

_[signature]_

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____
_____
_____

Dated: _____, 20____        Signature: _____

**N.B.   TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

_____, 20____

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT DEPARTMENT

MIDDLESEX, ss

SUPERIOR COURT
DEPARTMENT CIVIL ACTION
NO.:

XUJIAN REN,
    Plaintiff,

v.

KEOLIS COMMUTER SERVICES, LLC
    Defendants

## COMPLAINT

Plaintiff, Xujian Ren, by and through counsel, alleges as follows:

### PARTIES

1. Plaintiff Xujian Ren ("Plaintiff") is an adult resident of Newton, Massachusetts.
2. Defendant Keolis Commuter Services, LLC's ("Defendant" or "Keolis") principal office is located at 470 Atlantic Avenue, 5th Floor, 02210, Boston Massachusetts.
3. Keolis was an employer of Plaintiff for the purposes of the Massachusetts Fair Employment Practices Act ("M.G.L. c. 151B"), Title Vii of the Civil Rights Act of 1964 ("Title VII"), and 29 U.S.C. §623 et seq. (ADEA)
4. From July 2014 through on or about January 4, 2017, Keolis employed Plaintiff to work as an Assistant Conductor in Massachusetts

### JURISDCTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to G.L. c. 212, § 3.
6. This Court has personal jurisdiction over Conquest because it is registered as a Foreign Limited Liability Company doing business within the Commonwealth; employed Plaintiff to work as its agent in the Commonwealth; and because the acts and omissions giving rise to this Complaint occurred in the Commonwealth.

7. Venue is proper in this Court pursuant to G.L. c. 223, § 1, because Plaintiff resides in the judicial district of the Superior Court for Middlesex County.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff filed his Complaint for discrimination based on race and/or national origin against Keolis with the Massachusetts Commissions Against Discrimination ("MCAD") within 300 days of his termination.

9. Plaintiff formally withdrew his Complaint for discrimination against Keolis from MCAD in order to file a private right of action in civil court on August 30, 2018.

## FACTUAL ALLEGATIONS

10. Plaintiff began working for Keolis' predecessor as an Assistant Conductor in 2006.

11. On February 5, 2014, Kelois and the Massachusetts Bay Transportation Authority ("MBTA") entered into an operating agreement, whereby Keolis agreed to assume the operation and maintenance of the MBTA's commuter rail system on July 1, 2014.

12. On May 21, 2014, Keolis extended Plaintiff an offer of employment as an Assistant Conductor with the Transportation Department at Keolis.

13. In July 2014, Plaintiff commenced employment with Keolis as an Assistant Conductor as Keolis assumed the operations of the Massachusetts commuter rail service.

14. Upon information and belief, Keolis employs fifteen (15) or more employees

15. Plaintiff performed the duties of an Assistant Conductor for Keolis without incident from the beginning of his employment in July 2014 to December 1, 2016.

16. During his employment with both the MBTA and with Keolis, Plaintiff met all reasonable performance expectations for the position of Assistant Conductor.

17. On December 1, 2016, Plaintiff was scheduled to serve as an Assistant Conductor on train 613 running at 3:00pm from South Station in Boston to Needham Heights (otherwise known as "Run 988")

18. Plaintiff's last run prior to his scheduled 3:00pm shift on Run 988 ended at approximately 1:30pm.

19. In between the end of his last run at 1:30pm and his scheduled 3:00pm run on Run 988, Plaintiff fell asleep in the Keolis break room used by Keolis employees to rest and/or relax in between their scheduled runs.

20. Inadvertently, Plaintiff overslept and did not report on-time for his scheduled run at 3:00pm on Train 613.

21. The 3:00pm run on Train 613 was Plaintiff's last scheduled run of the day.

22. Immediately upon waking up, Plaintiff met with and informed Trainmaster, Mr. Ricky Platt ("Mr. Platt") in the break room that he had overslept and missed his last trip.

23. Mr. Platt informed Plaintiff that Ms. Christian Cappola ("Ms. Cappola") had already told him that Plaintiff had missed his scheduled 3:00pm run on Run 988 and proceeded to leave the room without providing Plaintiff with any further instructions.

24. Plaintiff remained in the break room at South Station waiting for further instructions for an additional thirty (30) minutes, until about 4:00pm.

3

25. At 4:00pm, after receiving no further instructions from Mr. Platt, Plaintiff left the break room to catch the 4:05pm deadhead train, train No. 615, to the Needham Heights train stop.

26. Upon boarding train No. 615 to Needham Heights, Plaintiff met and spoke with Assistant Conductor Ms. Crystal Harris ("Ms. Harris") and Conductor of the train Mr. Daniel Rubine ("Mr. Rubine")

27. Plaintiff explained to Ms. Harris and Mr. Rubine that he had inadvertently missed his 3:00pm run on Train 613.

28. Mr. Rubine, who was not the usual conductor for Train 615, proceeded to explain to Plaintiff that Train No. 615 was short staffed for the rush hour and asked if Plaintiff would be willing to help staff the train and ensure the safety of more than 150 youth students on the train.

29. Plaintiff immediately expressed a willingness to help the train staff scheduled on that run, but stated that Mr. Rubine should speak with a trainmaster to get approval first.

30. In response to Plaintiff's request that Mr. Rubine receive approval from a trainmaster, Mr. Rubine assured Plaintiff that he would speak with the trainmaster on duty when he returned to South Station on the inbound train.

31. Mr. Rubine explained to Plaintiff that he did not have time in that moment to receive approval as it was currently rush hour and he did not want to cause any delays.

32. At Plaintiff's urging, Mr. Rubine reassured Plaintiff that he would speak to and get the trainmasters approval for Plaintiff's work performed on train No. 615.

4

33. The following day, December 2, 2016, Plaintiff filled out his time sheet for the previous day.

34. To the best of his ability, Plaintiff attempted to follow company policy and the Federal Railroad Administration's ("FRA") Hours of Services regulations when filling out his time sheet.

35. According to his understanding of company policy and FRA regulations, Plaintiff believed that he was entitled to claim two (2) hours of diversion pay for being diverted to work on a run that he was no scheduled to be on.

36. Unknown to Plaintiff, Mr. Platt had marked him as off duty at 1:30pm and never informed Plaintiff of his notation.

37. Based on his understanding of company policy and diversion pay, Plaintiff believed that he was to properly note that he worked eleven (11) hours and fifty-nine (59) minutes on duty.

38. Though Plaintiff believed he was accurately reporting his time worked for December 1, 2016, Plaintiff submitted his time card under the category of time cards requesting that a supervisor review the time card to ensure that all time has been entered correctly.

39. Time sheets filed under the category "TIME SLIPS THAT NEED TO BE SIGNED" must be signed by a supervisor after a review in order to be entered.

40. Plaintiff sought the review, guidance, and approval of a supervisor in relation to his timesheet due to the unusual circumstances of the previous workday.

41. Unknown to Plaintiff, Mr. Platt marked him as off duty at 1:30pm and never informed Plaintiff of his notation.

5

42. Following the submission of his time sheet on December 2, 2016, Mr. Huggan and Ms. Woods requested to meet with Plaintiff.

43. During the ensuing meeting, Plaintiff attempted to explain the events giving rise to his time sheet submission and that he had marked the time sheet with a designation that it be reviewed prior to approval. He also attempted to explain that he had assumed that Mr. Rubine had spoken with the Trainmaster, as he had represented to Plaintiff that he would.

44. During the December 2, 2016 meeting, both Ms. Woods and Mr. Huggan told Plaintiff that the fact that he had accidentally missed his scheduled 3:00pm run on Run 988 was not of concern.

45. Without engaging in a preliminary investigation of any kind or simply providing Plaintiff with guidance on his time sheet submission, Mr. Huggan and Ms. Woods informed Plaintiff that they believed he had submitted a falsified timecard and that he was being placed on administrative leave pending an internal investigation, effective immediately.

46. Plaintiff had never received a formal warning about his time sheet submissions prior to his forced leave on December 2, 2016.

47. In the following days between December 2, 2016 and December 9, 2016, Plaintiff received an offer of lesser discipline from Keolis.

48. In its offer of lesser discipline on December 9, 2016, upon information and belief, Keolis offered Plaintiff a ninety (90) day suspension without pay to be followed by a one-year probation period.

49. The probation period stipulated that Plaintiff could be terminated for violation of any of Keolis' policies or procedures.

50. Based on his knowledge that fellow Keolis employees who had dishonestly and willfully violated portions of Keolis' policies and procedures only to receive suspensions closer to five (5) days in total, Plaintiff elected to reject the offered reduction in discipline.

51. Keolis scheduled an investigative hearing for December 22, 2016.

52. On the eve of the investigative hearing, Plaintiff's union representative approached him with another offer of lesser discipline.

53. The new offer of lesser discipline reflected the same terms, but reduced the unpaid suspension from ninety (90) days down to forty-five (45).

54. Again, Plaintiff elected to reject the offer of lesser settlement due to his knowledge that other Caucasian peers had been given far less discipline for arguably more egregious offenses.

55. On December 22, 2016, Keolis held and internal discipline hearing (the "Hearing").

56. During the Hearing, it was conclusively established that (1) Plaintiff was fully qualified to perform his duties as an Assistant Conductor, (2) Ms. Woods, who authorizes reviewable time slips, stated that she could not recall a single time in her tenure when a denial of requested extra time resulted in a disciplinary hearing such as the one taken against Plaintiff, and (3) the "written warning" relied on by Keolis in justifying its differentiating treatment of Plaintiff was not signed by either Plaintiff or a Keolis representative.

57. Ms. Woods also testified that she routinely denies claims for extra time without subjecting the submitting employee to further discipline.

58. During the Hearing, Plaintiff explained the rationale behind the entries on his time sheet and further testified that he had never seen or received a formal warning of any kind about his time slip submissions prior to the forced administrative leave on December 2, 2018.

59. In addition to Plaintiff's testimony, Mr. Rubine testified that that he asked Plaintiff to work on Train 615 and that he would get the time worked approved.

60. Although, Plaintiff stated that Ms. Harris was present for the conversation that he had with Mr. Rubine, Keolis did not call Ms. Harris, the only minority witness, to testify at the investigative hearing.

61. Despite Plaintiff's testimony and corroborating evidence demonstrating that Plaintiff had not falsified or attempted to falsify payroll documents, Keolis terminated Plaintiff's employment on January 4, 2017.

62. Keolis stated in its termination letter to Plaintiff that it had determined that Plaintiff "knowingly, willfully and dishonestly falsified payroll documents."

63. Keolis' stated reasons for terminating Plaintiff was mere pretext for its discriminatory motive for terminating Plaintiff.

64. As a result of Keolis' discriminatory treatment and termination, Plaintiff has suffered from anxiety and depression

65. Keolis has subjected Plaintiff to differing treatment than other similarly situated Caucasian male employees of Keolis, including Keolis Passenger Trainmen, Michael Boudreau, who not only skipped an assigned train run, but upon information and belief, was continuously untruthful about his absence to Keolis management and only received a 5 days suspension as a result.

66. Similarly to Mr. Boudreau's treatment, another Caucasian male employee of Keolis, Michael Kwasny, was merely provided with guidance from his superiors when he skipped his assigned run and reported his absence to management.

67. Upon information and belief, Keolis has treated Plaintiff differently than many other younger Caucasian male employees who have submitted time slips that were denied or that engaged in similar or worse conduct than Plaintiff.

68. In addition to the differential treatment endured by Plaintiff, regularly witnessed or was the target of racist and discriminatory comments from fellow employees.

69. On many occasions, Plaintiff would overhear co-workers discussing a driving accident in the crew room while Plaintiff was present and frequently hear them commenting that the driver must have been Asian.

70. Similarly, if there were ever a bad food smell in the employee break room, Plaintiff would frequently hear his fellow employees remark that the offensive smell must be emanating from Chinese food or when referring to Chinese food, remark how it was made with dog or cat meat.

71. These examples of racist and discriminatory comments about Asians made Plaintiff feel unwelcome and uncomfortable in the workplace.

72. Plaintiff was fearful of reporting any of the discriminatory and racist conduct of his co-workers for fear of becoming an even bigger target of racist comments.

73. Upon information and belief, Keolis has treated Plaintiff differently than many other similarly situated younger Caucasian American employees.

**COUNT I**
**Unlawful Discrimination On The Basis of Race and National Origin In Violation Of The Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, §§ 4(1), 4(1B)**
**(Keolis)**

9

74. Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

75. Under Massachusetts law, it is unlawful for an employer, or any agent of the employer, to discriminate against an employee in the terms of that employee's conditions of employment on the basis of that employee's race or national origin.

76. Plaintiff was an employee of Keolis for the purposes of M.G.L c. 151, §§4(1), 4(1B)

77. Plaintiff identifies and is in fact an Asian male individual from China.

78. Keolis discriminated against Plaintiff on the basis of his race and national origin by, at the least, treating Plaintiff differently than similarly situated Caucasian American employees as described herein.

79. Keolis harbored discriminatory animus against Plaintiff on the basis of his race and national origin as evidenced by Keolis' disparate treatment of Plaintiff in comparison to similarly situated Caucasian American employees of Keolis.

80. Keolis' proffered reason for terminating Plaintiff was mere pretext for its discriminatory motives.

81. Keolis' disparate treatment of Plaintiff in comparison to similarly situated Caucasian American employees is unlawful discrimination on the basis of race and national origin in violation of M.G.L. c. 151, §§4(1) 4(1B).

82. But for Plaintiff being an Asian male from China, he would not have been the object of the adverse employment action (suspension & termination), as described herein.

83. Keolis is vicariously liable for the discriminatory actions/omissions of its employees, officers, and agents.

84. Plaintiff has suffered actual pecuniary, emotional, and physical harm as a result of the actions/omissions of Keolis.

85. Plaintiff is entitled to all appropriate relief for Keolis' actions.

## COUNT II
### Unlawful Discrimination and Disparate Treatment In Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), et seq.
### (Keolis)

86. Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

87. Plaintiff identifies as and is in fact an Asian male individual from China.

88. Plaintiff was an "employee" of Keolis as that term is defined in 42 U.S.C. §2000e(f).

89. Keolis is an "employer" as defined under 42 U.S.C. §2000e(b).

90. As an Asian male from China, Plaintiff was treated differently on the basis of his race and national origin in comparison to similarly situated Caucasian American employees of Keolis, as described herein.

91. Further, Plaintiff was treated differently than nearly every employee who has submitted a time sheet card for review by Ms. Woods.

92. But for Plaintiff being an Asian male from China, he would not have been the object of the adverse employment action (suspension & termination), as described herein.

93. Keolis' proffered reason for terminating Plaintiff was mere pretext for its discriminatory motives.

94. Keolis is vicariously liable for the discriminatory actions/omissions of its employees, officers, and agents.

95. Plaintiff has suffered actual pecuniary, emotional, and physical harm as a result of the actions/omissions of Keolis.

96. Plaintiff is entitled to all appropriate relief for Keolis' actions.

## **COUNT III**
**Unlawful Discrimination and Disparate Treatment On the Basis of Age in Violation of M.G.L. c. 151B, §4(1C)**

97. Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

98. Plaintiff is a man over the age of forty as he was in his fifties at the time of his termination.

99. Upon information and belief, Plaintiff was treated differently than fellow Keolis employees who were under the age of forty.

100. During his employment with the MBTA and with Keolis, Plaintiff met all reasonable performance expectations for the position of Assistant Conductor.

101. Keolis' proffered reason for terminating Plaintiff was mere pretext for its discriminatory motives as other younger Caucasian employees were not subjected to termination for the same or worse conduct.

102. Upon information and belief, but for Plaintiff's age, Keolis would not have terminated Plaintiff's employment.

103. Keolis is vicariously liable for the discriminatory actions/omissions of its employees, officers, and agents.

104. Plaintiff has suffered actual pecuniary, emotional, and physical harm as a result of the actions/omissions of Keolis.

105. Plaintiff is entitled to all appropriate relief for Keolis' actions.

## COUNT IV
**Unlawful Discrimination and Disparate Treatment On the Basis of Age in Violation of 29 U.S.C. §623 et seq.**

106. Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

107. Plaintiff is a man over the age of forty as he was in his fifties at the time of his termination.

108. Upon information and belief, Plaintiff was treated differently than fellow Keolis employees who were under the age of forty.

109. During his employment with the MBTA and with Keolis, Plaintiff met all reasonable performance expectations for the position of Assistant Conductor.

110. Keolis' proffered reason for terminating Plaintiff was mere pretext for its discriminatory motives as other younger Caucasian employees were not subjected to termination for the same or worse conduct.

111. Upon information and belief, but for Plaintiff's age, Keolis would not have terminated Plaintiff's employment.

112. Keolis is vicariously liable for the discriminatory actions/omissions of its employees, officers, and agents.

113. Plaintiff has suffered actual pecuniary, emotional, and physical harm as a result of the actions/omissions of Keolis.

114. Plaintiff is entitled to all appropriate relief for Keolis' actions

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff claims:

1. Monetary damages in an amount to be determined at trial;
2. Emotional distress damages in an amount to be determined at trial;

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| **PLAINTIFF(S):** Xujian Ren <br> **ADDRESS:** 48 Irving Street <br> Newton, MA 02459 | | **COUNTY** Middlesex |
| | **DEFENDANT(S):** Keolis Commuter Services, LLC | |
| **ATTORNEY:** SLN Law, LLC; Jacob J. Thaler <br> **ADDRESS:** 46 South Main Street <br> Sharon, MA 02067 | **ADDRESS:** 470 Atlantic Avenue, 5th Floor <br> Boston, MA 02210 | |
| **BBO:** 698852 | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☐ YES    ☐ NO |

*If "Other" please describe:

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
　1. Total hospital expenses ............................................................................................................ $ _____
　2. Total doctor expenses ............................................................................................................. $ _____
　3. Total chiropractic expenses .................................................................................................... $ _____
　4. Total physical therapy expenses ............................................................................................ $ _____
　5. Total other expenses (describe below) .................................................................................. $ _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Subtotal (A): $ _____

B. Documented lost wages and compensation to date ...................................................................... $ 204,000.00
C. Documented property damages to dated ........................................................................................ $ _____
D. Reasonably anticipated future medical and hospital expenses ..................................................... $ _____
E. Reasonably anticipated lost wages ................................................................................................... $ _____
F. Other documented items of damages (describe below) ................................................................. $ TBD
Emotional Distress; Attorney's Fees

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

　　　　　　　　　　　　　　　　　　　　　　　　　　TOTAL (A-F): $ TBD

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
　　　　　　　　　　　　　　　　　　　　　　　　　　TOTAL: $ _____

Signature of Attorney/Pro Se Plaintiff: X _____    Date: 11/14/19

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____    Date: 11/14/19

## COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| **MIDDLESEX, SS** | **SUPERIOR COURT DEPARTMENT**<br>**CIVIL ACT. NO.:** |

```
XUJIAN REN                          )
      Plaintiff,                    )
                                    )
v.                                  )
                                    )
KEOLIS COMMUTER SERVICES, LLC       )
      Defendant.                    )
                                    )
```

### PLAINTIFF'S STATEMENT OF ESTIMATED MONEY DAMAGES

Pursuant to M.G.L. c. 212 § 3A, Plaintiff, Xujian Ren, through counsel, sets forth the following estimate of money damages and factual basis thereof.

| Category | Amount | Factual Basis |
|---|---|---|
| Lost Wages as a result of Wrongful Termination | $204,000 | Damages resulting from Defendants wrongful termination of Plaintiff. Defendants discriminated against Plaintiff on the basis of age, race, and national origin. As a result of Defendants discrimination, Plaintiff has experienced over two years of lost wages. |
| Emotional Distress | TBD | Emotional distress resulting from Defendants wrongful termination of Plaintiff. Plaintiff has experienced severe physical and mental health damages as a result of the discriminatory conduct of the Defendants. |
| Attorney's fees | TBD | Attorney's fees for assessing claims, drafting the Complaint, participating in the discovery process, motion practice, trial preparation, and conducting trial. The actual amount of attorney's fees to be determined. |

Respectfully submitted,
Xujian Ren
By his attorneys:

Emily E. Smith-Lee (BBO# 634223)
esmithlee@slnlaw.com
Jacob J. Thaler (BBO# 698852)
jthaler@slnlaw.com
SLNLAW LLC
46 South Main Street
Sharon, MA  02067
Tel: 781-784-2322
Fax: 781-328-1772

Dated: November 14, 2019